UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| BRANDY NICOLE BREWER LAMDIN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:10-CV-280 |
| | ) | (VARLAN/GUYTON) |
| AEROTEK COMMERCIAL STAFFING and | ) | |
| AMERICAN BACKGROUND | ) | |
| INFORMATION SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This civil action is before the Court on Defendants' Joint Motion to Dismiss Amended Complaint [Doc. 10], the second joint motion to dismiss filed by defendants Aerotek Commercial Staffing ("Aerotek") and American Background Information Services, Inc. ("ABI"). In the motion, defendants move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for dismissal of claims in plaintiff Brandy Nicole Brewer Lamdin's first amended complaint. Plaintiff has responded in opposition [Doc. 12], and defendants have filed a reply [Doc. 13]. The matter is ripe for determination. For the reasons stated herein, defendants' second joint motion to dismiss will be granted in part and denied in part.

I.  **Relevant Facts**

Plaintiff initiated this action in the Circuit Court for Knox County on May 28, 2010, asserting claims against defendants arising out of Aerotek's termination of plaintiff's employment following the results of a background investigation check performed by ABI

[*see* Doc. 1-1; Doc. 9]. Plaintiff's initial complaint asserts common law claims for tortious interference and/or intentional interference with present and prospective employment relationships, a statutory claim for procurement of a breach of contract, and claims for defamation and false light invasion of privacy [*see* Doc. 1-1]. On July 9, 2010, defendants filed the first joint motion to dismiss plaintiff's claims [Doc. 5]. Plaintiff responded in opposition [Doc. 8]. On July 29, 2010, plaintiff filed the first amended complaint [*see* Doc. 9]. Plaintiff's first amended complaint (referred to hereinafter as "the complaint") alleges essentially the same factual allegations and claims as the initial complaint and includes an additional claim against both defendants for violations of §§ 1681e(b) and 1681(k) of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. §§ 1681, *et seq.*

In the complaint, plaintiff alleges that she had a contractual arrangement with Aerotek, a "so-called staffing company," which places individuals in temporary positions with independent employers [Doc. 9, ¶ 7]. Plaintiff alleges that her contractual arrangement with Aerotek placed her in a temporary position with Ison Automotive Casting ("Ison"), an independent employer [Doc. 9, ¶ 7]. Plaintiff alleges that her contractual arrangement with these two entities provided that plaintiff was to work for Ison during a "probationary period." [*Id.*]. Following this period, if plaintiff passed a background investigation check, she would then be offered a full-time job with Ison on an "indefinite but open-ended basis." [*Id.*]. Plaintiff alleges that she performed her job at Ison in an "excellent fashion" and was soon due to be offered full-time employment [*Id.*].

On or about November 12, 2009, while plaintiff was employed at Ison through Aerotek, plaintiff alleges that ABI performed a background investigation check on her and sent a written report to Aerotek (the "background report") [Doc. 9, ¶ 8]. Plaintiff alleges that the background report recklessly and falsely stated that plaintiff had been convicted of a felony and a misdemeanor, had served jail time, was serving probation, and had made restitution for theft and an assault [*Id.*]. Plaintiff alleges that the false information in the background report was communicated to Ison and, as a result, plaintiff lost her prospective employment with Ison as well as her present employment with Aerotek [*Id.*]. Plaintiff also alleges that the false information in the background report was communicated by Aerotek and ABI in such a way as to place plaintiff in a "false light" with her peers, employer, and her prospective employer [*Id.*]. She also alleges that the tone in which this information was communicated was "calculated to embarrass and humiliate" plaintiff and impact her standing and reputation in the community [*Id.*, ¶ 13]. Plaintiff further alleges that Aerotek and ABI knew or should have known that the information in the background report was false, that no effort had been made to determine whether plaintiff was guilty of the alleged acts, that the statements in the report were defamatory, and that in conveying this false information, defendants "acted maliciously, with wanton indifference, gross negligence and/or in reckless disregard for plaintiff's rights and reputation." [*Id.*, ¶¶ 11, 12].

On August 12, 2010, defendants filed the second joint motion to dismiss [Doc. 10] arguing that plaintiff's complaint fails to state claims against Aerotek for violations of the FCRA, the FCRA preempts plaintiff's state law claims against ABI, and the complaint fails

to allege the necessary elements for a statutory claim for procurement of a breach of contract and the common law claims of tortious interference and false light invasion of privacy.[1]

## II. Standard of Review

A party may move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). In determining whether to grant a motion to dismiss, all well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990), the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). While a complaint need not contain detailed factual allegations, the plaintiff must provide grounds for his or her entitlement to relief, and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a case of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). Further, a complaint will not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 557.

---

[1] Because the first amended complaint is now the operative pleading in this case [*See* Doc. 11, p. 2; Doc. 12, p. 2], and given defendants' filing of the second joint motion to dismiss [Doc. 10], defendant's first joint motion to dismiss [Doc. 5] will be denied as moot.

In *Ashcroft v. Iqbal*, — U.S.— , —, 129 S.Ct. 1937, 1949 (2009), the United States Supreme Court reaffirmed its prior holding in *Twombly* and stated that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). When a complaint states no more than conclusions, such are not entitled to the assumption of truth. *Id.* at 1950. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Id.*; *see also Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629-30 (6th Cir. 2009) (stating that the standard for a motion to dismiss is to screen out cases that "while not utterly impossible, are 'implausible'").

## III. Analysis

### A. The FCRA Claims

#### 1. Against Aerotek

Plaintiff alleges that Aerotek violated §§ 1681e(b) and 1681k of the FCRA and is subject to civil liability under §§ 1681n and/or 1681o for such violations [Doc. 9, ¶¶ 9-10]. The FCRA "regulates credit reports, provides guidelines for credit reporting agencies and entities that furnish consumer information to credit reporting agencies, and provides protections to consumers." *Ruggiero v. Kavlich*, 411 F. Supp. 2d 734, 736 (N.D. Ohio 2005); *see* 15 U.S.C. § 1681(a). Section 1681e(b) of the FCRA states as follows:

> Whenever a *consumer reporting agency* prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b) (emphasis added). Section 1681k states as follows:

> A *consumer reporting agency* which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall–
>
> > (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is begin reported by the consumer reporting agency . . . or
> >
> > (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. . . .

15 U.S.C. § 1681k(a) (emphasis added).

The FCRA defines a "consumer reporting agency" as:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f). Given this definition, a "consumer reporting agency" must therefore be a person or entity that prepares "consumer reports." As explained in *Carney v. Experian Info. Solutions, Inc.*, "[t]he FCRA places obligations on three distinct types of entities

involved in consumer credit: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies. . . . In order for [a] plaintiff to state a claim . . . under the FCRA, . . . defendants must fall into one or more of these regulated groups." 57 F. Supp. 2d 496, 500 (W.D. Tenn. 1999).

Defendants argue that the facts alleged by plaintiff do not support the conclusion that Aerotek is a "consumer reporting agency" covered by the above provisions of the FCRA because any violation must necessarily be committed by a "consumer reporting agency." Plaintiff disputes this and argues that the facts alleged in her complaint do not preclude Aerotek from being a consumer reporting agency. Plaintiff also argues that her invocation of the FCRA implies that Aerotek is a consumer reporting agency. Finally, plaintiff argues that even if Aerotek is not a consumer reporting agency, it may still be held vicariously liable for ABI's actions. The Court disagrees with each of plaintiff's arguments.

In order to withstand a motion to dismiss, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949; *see also Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). At no place in the complaint does plaintiff allege facts that would raise the reasonable inference that Aerotek is a consumer reporting agency. Rather, plaintiff alleges that Aerotek is a "so-called staffing company" which enters into contractual arrangements with workers and then places these workers into temporary positions with independent employers. [*Id.*, ¶ 7]. The Court does not read these allegations as sufficient to raise the inference that Aerotek is a consumer reporting agency. In addition, the Court does

not agree that the mere invocation of the FCRA arises any implication about Aerotek whatsoever. If this were true, motions to dismiss for failure to state a claim would be virtually useless tools in litigation. Plaintiff's vicarious liability argument is also unpersuasive. While plaintiff is correct that vicarious liability and agency law are well-recognized by this Court, as well as by the Court of Appeals for the Sixth Circuit, plaintiff has offered no factual allegations in her complaint pertaining to any agency relationship between Aerotek and ABI, nor does the complaint contain an allegation of vicarious liability. This lack of factual allegations cannot meet the standard of raising a plaintiff's "right to relief above the speculative level." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 1965).

Accordingly, because plaintiff has not alleged sufficient facts to support the reasonable inference that Aerotek is a "consumer reporting agency" that would be covered by the FCRA provisions identified in the complaint, plaintiff's claims under the FCRA and against Aerotek are dismissed.

### 2. Against ABI[2]

Plaintiff also alleges that ABI violated §§ 1681e(b) and 1681k of the FCRA and is subject to civil liability under §§ 1681n and/or 1681o for such violations [Doc. 9, ¶¶ 9-10]. In addition to these FCRA claims, plaintiff's complaint also contains various state law claims.

---

[2] Unlike Aerotek, defendants state that ABI is a "consumer reporting agency" that is regulated by the FCRA [Doc. 11, p. 7].

In the motion, defendants correctly point out that the FCRA preempts certain state law claims when only negligence, as opposed to malice or willful intent to injure, is at issue.

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring an action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency . . . based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer report against whom the user has taken adverse action, based in whole or in part on the report except as false information furnished with malice or willful intent to injure such customer.

15 U.S.C. § 1681h(e). Thus, under the plain language of this statute, the FCRA preempts state law claims "in the nature of defamation, invasion of privacy, or negligence" when only negligence, as opposed to "malice or willful intent to injure[,]" is at issue. *Id.*

The complaint contains factual allegations that defendants "willfully and/or maliciously fail[ed] to perform a proper investigation of [plaintiff's] background . . . with reckless disregard for the truth" [Doc. 9, ¶ 5], "defendants were . . . willful because they failed to follow reasonable procedures" [*Id.*, ¶ 9], and at the time of the allegedly false background report, defendants knew or should have ascertained the truth or falsity of their statements and "failing to make such a determination, defendants acted maliciously, with wanton indifference, gross negligence and/or in reckless disregard for plaintiff's rights and reputation." [*Id.*, ¶ 11].

In § 1681h(e) cases, courts have held that a statement is made with "malice" if it is made "with knowledge that it was false or with reckless disregard of whether it was false or

not." *Miller v. Wells Fargo & Co.*, No. 3:05-CV-42-S, 2008 WL 793676, at *10 (W.D. Ky. Mar. 24, 2008) (quoting *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 788-89 & n.11 (W.D. Ky. 2003)). Further, "[t]he FCRA does not define the term willful, but courts have interpreted it as requiring a showing that the defendant 'knowingly and intentionally committed an act in conscious disregard for the rights of others.'" *Wolf v. MBNA America Bank*, 485 F. Supp. 2d 874, 888 (W.D. Tenn. 2007) (quoting *Stafford*, 262 F. Supp. 2d at 788).

Because plaintiff has alleged that defendants willfully and recklessly violated the FCRA, alleged that defendants knew that the information contained in the background report was false or acted with reckless disregard as to whether it was false or not, and alleged that defendants maliciously and willfully intended to injure plaintiff's rights and reputation, the Court cannot conclude that plaintiff has failed to state a claim that defendants acted with malice and with conscious disregard of plaintiff's rights. Accordingly, the Court disagrees with defendants that plaintiff's state law claims are preempted under § 1681h(e).[3]

---

[3] Defendants urge the Court to consider the case of *Cooper v. Verifications, Inc.*, No. 1:04-CV-385-TS, 2008 U.S. Dist. LEXIS 8908 (N.D. Ind. Feb. 4, 2008) as a better interpretation of § 1681h(e). *Cooper*, 2008 U.S. Dist. LEXIS 8908, at *46. While the Court has reviewed this case, the Court notes that the *Cooper* court was considering the issue of whether the plaintiff had proved malice or willful intent to injure in regard to the defendant's request for summary judgment and not a request for dismissal under Rule 12(b)(6). *Id.* at *2. The *Cooper* court also rejected the plaintiff's position that he did not have to show malice and observed that the "[p]laintiff has not alleged any facts tending to show the [d]efendant meant to injure the consumer." *Id.* at *46. Further, the *Cooper* court noted that the defendant had promptly sent a corrected report to the consumer upon learning of the false information in the initial report and that such actions "are not the actions of an entity meaning to injure a person." *Id.* at *46. In this case, given plaintiff's factual allegations, and under the applicable standard of review for a motion to dismiss, the Court cannot reach the same conclusion.

### B.   Procurement of a Breach of Contract – T.C.A. § 47-50-109

Plaintiff has alleged against both defendants a statutory claim for procurement of a breach of contract. Section 47-50-109 of the Tennessee Code Annotated provides that:

> It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract.

T.C.A. § 47-50-109. The elements of a cause of action for procurement of a breach of contract in Tennessee are: (1) there must be a legal contract; (2) the wrongdoer must have knowledge of the existence of the contract; (3) there must be an intention to induce its breach; (4) the wrongdoer must have acted maliciously; (5) there must be a breach of the contract; (6) the act complained of must be the proximate cause of the breach of the contract; and (7) there must have been damages resulting from the breach of the contract. *Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 158 (Tenn. Ct. App. 1997). The Tennessee Supreme Court has held that, "[i]n order to recover for procurement of a breach of contract, the plaintiff must prove that, there was a legal contract for a designated term[.]" *Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994). In contrast to a contract for a fixed term of employment, a contract for a designated term of employment, "may be terminated by [the] employer or employee for 'good case, bad cause, or no cause'" and such termination will not constitute a breach of contract. *Fitzgerald v. Abbott*, No. M2008-00920-COA-R3-CV, 2009 Tenn. App. LEXIS 56, at *4 (Tenn. Ct. App. Feb 5, 2009).

Defendants argue that plaintiff has failed to allege that she had a legal contract for a designated term. Plaintiff responds that she has not asserted that she was either an at-will or a non-at-will employee and that any conclusion that plaintiff was an at-will employee is an unwarranted factual excursion beyond the four corners of the complaint.

Upon review of plaintiff's allegations, and accepting such allegations as true, the Court agrees with defendants that plaintiff has failed to allege the existence of a contract of employment for a designated term. In regard to the "contractual arrangement" at issue in this case, plaintiff alleges that her arrangement with Aerotek and Ison was, "if she did well during a probationary period and then passed a background check, she would be offered a full-time job with Ison on an indefinite but open-ended basis." [Doc. 9, ¶ 7]. Plaintiff then alleges that, upon ABI's communication of the contents of the background report to Aerotek and Ison, "plaintiff lost her prospective employment with Ison and also her present position with Aerotek." [*Id.*, ¶ 8]. Nowhere in the complaint has plaintiff alleged any other facts regarding what type of employment she had with Aerotek or Ison.

Given that the type of employment a plaintiff has with a defendant is a crucial element of a claim for procurement of a breach of contract, and because plaintiff has neither alleged the existence of a contract for a fixed or designated period of time, nor given the Court any other factual allegations indicating that her contractual arrangement with Aerotek and Ison constitutes a term of employment for a fixed period, the Court finds that plaintiff has failed to make the necessary allegations for a claim for procurement of a breach of contract under § 47-50-102. *See, e.g., Smith v. Harriman Util. Bd.*, 26 S.W.3d 879, 885-86 (Tenn. Ct. App.

2000) (finding no binding contract of employment for a fixed term in regard to a plaintiff's § 47-50-102 claim and dismissing the claim); *Smith v. Rosenthal Collins Group, LLC*, No. 03-2360 Ml/An, 2005 U.S. Dist. LEXIS 33019, at *30 (W.D. Tenn. Sept. 10, 2005) (finding that the plaintiff was an at-will employee and thus, the defendants could not be held liable for the plaintiff's § 47-50-102 claim). Accordingly, plaintiff's statutory claim for procurement of a breach of contract is dismissed as to both defendants.

### D. Tortious Interference with Current or Prospective Employment Relationship

Plaintiff has also alleged against both defendants claims for tortious interference with current or prospective employment relationships. In Tennessee, the elements of an intentional interference with business or employment relationships claim are: (1) an existing business or employment relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business or employment relationship; (4) the defendant's improper motive or improper means; and (5) damages resulting from the tortious interference. *Trau-Med of America Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002).

In order to proceed with a claim for tortious interference with a current or prospective employment relationship, a plaintiff must prove either an "improper motive" or "improper means," not both. *See Forsman v. Rouse*, No. 3:07-0327, 2008 U.S. Dist. LEXIS 47266, at

13

*24 (M.D. Tenn. Jun. 16, 2008) (citing *Trau-Med*, 71 S.W.3d at 701 n.5). The Tennessee Supreme Court has held that a plaintiff claiming an improper motive must "demonstrate that the defendant's predominant purpose is to injure the plaintiff." *Trau-Med*, 71 S.W.3d 691 at 701 n.5; *Bolton v. Morgan*, No. 05-2315 MA/P, 2006 WL 840422, at *5 (W.D. Tenn. Mar. 29, 2006). Alternatively, a plaintiff may demonstrate that a defendant employed "improper means," a determination which is "dependent on the particular facts and circumstances of a given case." *Trau-Med*, 71 S.W.3d at 701 n.5. The non-exclusive list of means of interference with a business relation that may be considered "improper" are enumerated in *Trau-Med*. These include:

> [A]cts that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules, violence, threats of intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship, and those methods that violate an established standard of a trade or profession, or otherwise involve unethical conduct, such as sharp dealing, overreaching, or unfair competition.

*Id.* (internal citations omitted).

In the motion, defendants argue that plaintiff has failed to allege sufficient facts to support the conclusions that defendants had either an "improper motive" or employed "improper means." Plaintiff disputes this contention and points to specific paragraphs in the complaint in which she alleges defendants "willfully and/or maliciously fail[ed] to perform a proper investigation of her background [and did so] with reckless disregard for the truth" [Doc. 9, ¶ 5] and "defendants knew, and /or in the exercise of reasonable care, should have

known, that the . . . written communications about plaintiff were untrue . . . and in failing to make such a determination, defendants acted maliciously, with wanton indifference, gross negligence and/or in reckless disregard for plaintiff's rights and reputation." [*Id.*, ¶ 11].

Plaintiff acknowledges that employers may use background investigation checks as legitimate tools in evaluating prospective employees and their employment contracts [Doc. 12, p. 23]. Plaintiff argues, however, that defendants' motives were improper because defendants knew or should have known that the information in plaintiff's background check was false and in failing to make a determination of falsity, defendants acted maliciously and with reckless disregard of the truth. The Court disagrees. As noted by the court in *Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*, "allegations of mere 'malice' are not sufficient to state a claim for tortious interference[.]" 461 F. Supp. 2d 629, 641 (M.D. Tenn. 2009). Accepting as true plaintiff's allegations that defendants knew or should have know the information contained in the background report was false and defendants willfully communicated the false information to plaintiff's current and prospective employers, plaintiff has not alleged that a motive to injure her was defendants' predominant motive apart from the legitimate purpose of the background investigation check.

Plaintiff's allegations, however, are sufficient to survive a motion to dismiss. This is because plaintiff has alleged "improper means" as that term is explained in *Trau-Med*. Accepting as true plaintiff's allegations that defendants failed to perform a "proper investigation" of her background and made defamatory statements in the background report, these allegations fall within the broad list outlined in *Trau-Med* of what may constitute

improper means. *See Trau-Med*, 71 S.W.3d at 701 n.5 ("some examples of improper interference [include]. . . defamation, duress, undue influence, misuse of inside or confidential information . . . and those methods that violate an established standard of a trade or profession[.]"). Accordingly, plaintiff's common law claim against both defendants for tortious interference with current or prospective employment relationships may proceed.

### E. False Light Invasion of Privacy

Plaintiff has also asserted a claim against both defendants for placing her in a false light [Doc. 9, ¶ 13]. The Tennessee Supreme Court has recognized the tort of false light invasion of privacy, as set forth in § 652E of the Restatement (Second) of Torts, as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 643-44 (Tenn. 2001).

Defendants have moved for dismissal of this claim, arguing that plaintiff has not sufficiently alleged the "publicity" requirement for false light invasion of privacy. In her complaint, plaintiff alleges that false information was communicated to "a large group of people, including her peers, her employers, and her prospective employers" [Doc. 9, ¶ 13]. And in her response to defendants' request for dismissal of this claim, plaintiff argues that such false information "would have spread like wildfire through a company like Ison." [Doc. 12, p. 24].

Accepting these allegations as true, that the allegedly false information was communicated to Aerotek and Ison and its respective employees and spread like wildfire through the companies, the Court does not find such allegations sufficient to meet the publicity requirement for false light invasion of privacy. "'Publicity' in this sense 'means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" *Thornburgh v. Christy*, No. 2:09-CV-141, 2010 WL 1257984, at *14 (E.D. Tenn. Mar. 26, 2010) (quoting *Secured Fin. Solutions, LLC v. Winer*, No. M2009-00885-COA-R3-CV, 2010 WL 334644, at *4 (Tenn. Ct. App. Jan 28, 2010)). "The element of publicity is not met if the communication is to a single person or even to a small group of persons." *Id.* As noted in *Secured Fin. Solutions*, the Restatement (Second) of Torts defines "publicity" in a claim for false light invasion of privacy, in contrast to the "publication" requirement of the tort of defamation. *Secured Fin. Solutions*, 2010 WL 334644, at *4. Comment a to § 652D of the Restatement states as follows:

> Publicity, as it is used [in false light invasion of privacy], differs from "publication," as that term is used . . . in connection with liability for defamation. "Publication," in that sense, is a word of art, which includes any communication by the defendant to a third person. "Publicity," on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication . . . . It is one of a communication that reaches, or is sure to reach, the public.

17

*Secured Fin. Solutions*, 2010 WL 334644, at * 4 (quoting Restatement (Second) of Torts § 652D cmt. a (1977)).

In *White v. Fort Sanders-Park West Med. Ctr.*, No. E2006-00330-COA-R3-CV, 2007 WL 241024, at *7 (Tenn. Ct. App. Jan 29, 2007), the court of appeals touched on this issue in affirming summary judgment for an employer regarding an employee's false light invasion of privacy claim. *White*, 2007 WL 241024, at *7. In *White*, the plaintiff was a nurse who had been suspended from her job for giving a lortab to a patient without a doctor's orders. *Id.* After leaving her employment, the plaintiff sued her employer, and one of her claims was for false light invasion of privacy. *Id.* The court of appeals rejected this claim, finding that "[p]laintiff's sole assertion in this regard is that she heard there was a nurse at Methodist Medical who said she knew about a nurse . . . who was fired after 29 years of service for giving a lortab." *Id.* The court of appeals concluded that the plaintiff had not alleged sufficient facts for her false light claim regarding the transmission of the alleged detrimental information and held that "the publication of information must go outside the employer for the claim to succeed." *Id.* In addition, in *Malmquist v. Hearst Corp.*, No. 2:09-cv-2416-JPM-cgc, 2010 WL 1257800 (W.D. Tenn. Mar. 26, 2010), a case in which the court denied the defendant's motion to dismiss the plaintiff's false light claim, the alleged "publicity" was publication of an article in *Redbook* magazine that the plaintiff alleged portrayed him in a false light. *Malmquist*, 2010 WL 1257800, at *1. The Court finds that the publicity in *Malmquist*–publication in a national magazine–is distinguishable from the alleged "publicity"

18

in this case–publication to Isom, plaintiff's prospective employer and Aerotek, plaintiff's current employer, and the entities' respective employees.

Accordingly, and without more factual allegations to raise the reasonable inference that communication to Aerotek and Ison would reach the public or be "substantially certain to become . . . public knowledge," the Court finds that plaintiff has not plead sufficient factual allegations to state a claim for false light invasion of privacy and this claim is dismissed as to both defendants.

## IV. Conclusion

For the reasons stated above, defendants' first joint motion to dismiss [Doc. 5] is **DENIED as moot** and defendants' second joint motion to dismiss [Doc. 10] is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** to the extent that the FCRA claims alleged by plaintiff against Aerotek are **DISMISSED**, plaintiff's procurement of a breach of contract claim is **DISMISSED** as to both Aerotek and ABI, and plaintiff's false light invasion of privacy claim is **DISMISSED** as to both Aerotek and ABI. The motion is **DENIED** to the extent that plaintiff's state law claims against ABI are not preempted by the FCRA and plaintiff has stated a claim for intentional interference with a current or prospective employment relationship.

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE
